**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabrina Smith, et al.,<br><br>    Plaintiff,<br><br>v.<br><br>John T. Shartle, et al.,<br><br>    Defendants. | No. CV-18-00323-TUC-RCC<br><br>**ORDER** |

On June 27, 2019, the Court held a Case Management Conference in this matter. The Court considered the proposed case management deadlines, and informed the parties that it would issue an Order confirming the deadlines and addressing the remaining issues before the Court – i.e. the consolidation of this matter with the FTCA claim; Defendants Shartle and McClintock's ("Wardens") Motion to Dismiss (Doc. 30); and Plaintiffs' Motion to Amend Complaint (Doc. 41).

### I. CONSOLIDATION

Under Local Rule 42, two cases may be consolidated into a single case when the cases "(1) arise from substantially the same transaction or event; (2) involve substantially the same parties or property; . . . (4) call for determination of substantially the same questions of law; or (5) for any other reason would entail substantial duplication of labor if heard by different judges." LRCiv 42.

The Parties agree that this case should be consolidated with Plaintiffs' newly-filed FTCA claim in Case Number CV-19-00325-RCC. The Court agrees: the factual basis is

identical, and consolidation adds the Government as a party and avoids duplication of labor. As such, the Court will order the cases consolidated.

## II. MOTION TO AMEND COMPLAINT AND DISCLOSURE PURSUANT TO TOUHY SUBPOENA

Plaintiffs' Motion for Leave to File Second Amend Complaint (Doc. 41) adds additional factual allegations to the Amended Complaint, but because Plaintiffs have been unable to ascertain the names of the Bureau of Prisons' ("BOP") employees involved in transferring Mr. Smith prior to his death, it fails to include these names. Rather than evaluating the motion at this juncture, in the interest of judicial economy the Court will deny the motion with leave to refile once Plaintiffs have more detail about the identity of the John Doe Defendants.

To obtain the John Doe Defendants' names, Plaintiffs issued a *Touhy* subpoena on the Department of Justice ("DOJ") asking for: all documents in BOP and Federal Bureau of Investigation's possession about the employees working during the transfer; any information about the homicide and the placement of Smith; and BOP policies about housing assignments and protective treatment for sex offenders. In addition, Plaintiffs wanted all information regarding the determination of who should and should not share a cell with Romeo Giovanni, the inmate who strangled Smith. The DOJ has refused to provide such discovery because the Court ordered discovery stayed until the pending Case Management Conference. Furthermore, the DOJ and the Wardens argue that Plaintiffs should not be permitted more discovery until the pending Motion to Dismiss is decided.

Under the MIDP, initial disclosures include "the names and, if known, the addresses and telephone numbers of all persons . . . likely to have discoverable information . . . and [must] provide a fair description of the nature of the information each such person is believed to possess." General Order 17-08 ¶ (B)(1). Without determining the matter conclusively, the Court believes that Plaintiffs have stated a viable *Bivens* claim against the John Doe Defendants if Plaintiffs can name them individually. The only way Plaintiffs can do so is for the DOJ to provide these names. Therefore, the Court will order the DOJ

to release "the names and, if known, the addresses and telephone numbers of" the persons who were involved in the transfer of Mr. Smith to the SHU and placement with Mr. Giovanni "and provide a fair description of the nature of the information each such person is believed to possess."

### III. MOTION TO DISMISS

In the Motion to Dismiss the Wardens' first claim that Plaintiffs' suit is an unlawful extension of *Bivens* because it demands personal liability for the Wardens failure to change BOP policy to protect sex offenders. Second, the Wardens argue that they enjoy qualified immunity. Finally, the Wardens assert that because McClintock was not acting warden during the event she should be dismissed.

    a. <u>Bivens</u>

*Bivens* claims create an implied right of action for damages against a federal officer's personal constitutional violations. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The Supreme Court has extended implied remedies under *Bivens* in three cases only: *Bivens* (unconstitutional Fourth Amendment search), *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment Equal Protection violation for sex discrimination), and *Carlson v. Green*, 446 U.S. 14 (1980) (*Bivens* claim for Eighth Amendment violation for failure to provide medical care permissible despite available FTCA claim). *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). Since *Bivens*, the Supreme Court warned that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

Plaintiff's claim extends *Bivens* beyond what has previously been permitted by the Supreme Court. The Wardens state that this case seeks to extend *Bivens* because it is an attempt to hold the Wardens liable for not initiating a policy about housing sex offenders. In contrast, Plaintiffs claim that they are not trying to pursue policy change, and that they only want to hold the Wardens liable because they knew of the risks to sex offenders and "knew of [Smith's] assignment in the SHU, including that he was placed in a cell with Mr. Giovanni." (Doc. 35 at 11.) But, no facts alleged in the Amended Complaint suggest that

the Wardens were directly aware of the danger Giovanni posed to Smith and consciously disregarded it. Nor is there any allegation that they knew of the direct threat to any sex offender housed with Giovanni.

While Plaintiffs claim they have no interest in holding the Wardens accountable for failing to implement a policy change in sex offender housing, they contend that "[u]nder the oversight of Defendants Shartle and McClintock, there was no system in place to ensure that sex offenders were housed separately from the gang drop-outs and other prisoners who wished to harm them." *Id*. at 11. In addition, Plaintiffs are seeking declaratory and equitable relief, not simply damages. So, it appears that it was not the direct unconstitutional actions of the Wardens that support Plaintiffs' claim, but the Wardens' failure to create a policy that protected sex offenders.

While *Bivens* has been permitted for certain Eighth Amendment and Fifth Amendment violations, the facts differ than those presented here. In the Eighth Amendment context, the officer was aware of the need for medical care and failed to provide it. *Carlson*, 446 U.S. at 14, fn.1. Furthermore, the Supreme Court's opinion in *Carlson* issued in 1980, sixteen years before the enactment of the Prison Litigation Reform Act ("PLRA"). Here, there is no indication that the Wardens were aware of the threats against Smith, and as described *infra*, Congress has since provided another remedy under PLRA. Furthermore, the Fifth Amendment claim was a sex discrimination in employment claim and not, as indicated here, a violation of familial association. *See Davis*, 442 U.S. 231. So, this case presents a new context.

Plaintiffs also contend that *Farmer v. Brennan*, 511 U.S. 825 (1994), demonstrates they are permitted to bring a *Bivens* claim. But the *Farmer* opinion issued prior to the Supreme Court's clarification in *Ziglar*, 137 S. Ct. 1843 (2017), and Farmer's claim did not allege that the officers needed to impose a BOP policy and seek declaratory and equitable relief. Moreover, *Farmer* did not decide when a *Bivens* claim may be brought. Instead, *Farmer* held only that deliberate indifference exists when an "official knows of and disregards an excessive risk to inmate health or safety: and that to find deliberate

indifference "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. There is no allegation that the Wardens were aware that Giovanni had threatened Smith. In addition, *Farmer* did not include a Fifth Amendment challenge, and was decided prior to the enactment of the PLRA. This case differs from *Farmer* and does not impose liability under *Bivens*.

Because this case presents a new context, the Court will also look at whether Congress has provided an equivalent remedy in lieu of *Bivens* and "special factors" exist counseling preclusion of a *Bivens* claim.

### b. <u>Congressional Remedy Available</u>

A plaintiff may not sue under *Bivens* if there is an "explicit congressional declaration that persons injured by federal officers' violations . . . may not recover damages from the officers but must be remitted to another remedy, equally effective in Congress' view. *Carlson*, 446 U.S. at 19. Further, relief may be precluded where "special factors" exist that suggest the court should not permit the implied right of action. *Id*. The Wardens argue (1) that the Prison Litigation and Reform Act ("PLRA") supplies such alternate source of relief, and (2) special factors weigh against a *Bivens* remedy.

When Congress enacted the PLRA, it provided a statutory scheme guiding when prisoners could file claims related to constitutional violations about their conditions of confinement. 42 U.S.C. § 1997e. Previously, this Court quoted the Supreme Court's statement that the PLRA provides a right to relief precluding *Bivens* in new contexts.

With regard to prisoner claims, the Supreme Court noted:

> When "Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . . [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests

> Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citation omitted).

*Portway v. Bracamontes*, Doc. 92 at 5, No. CV-15-00415-RCC (Sept. 7, 2018). This Court also noted that "determining whether prisoners should have a damages remedy for claims []within the prison [outside of those instances acknowledged in *Ziglar*] involves 'a host of considerations that must be weighed and appraised,' and, as such, Congress is in a better position than the Court to determine the parameters of such a damages claim."

Given the Court's previous analysis, it finds that the PLRA does provide another, equally effective remedy, and special factors exist weighing against allowing an implied remedy under *Bivens*. In addition, *Bivens* has not been extended to this specific context – Plaintiffs' claim to recover against the Wardens for failing to implement a policy to ensure the safety of sex offenders housed with others – it presents a new context and should not proceed. However, even if Plaintiffs' claim does not present a new context, as noted below, the Wardens are immune from suit because they enjoy qualified immunity.

### c. *Qualified Immunity*

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (citing *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010); *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011). To be clearly established, the right must be such that "every reasonable official would have understood that what he was doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks omitted). Indeed, the clearly established law cannot be a generalized inquiry, but must be specific to the facts of the instant case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

When a court decides that a constitutional violation occurred, and that violation was

clearly established, the claim must still be premised upon that individual's actions. "[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others. . . . *Bivens* is not designed to hold officers responsible for acts of their subordinates." *Ziglar*, 137 S. Ct. at 1860.

Although Plaintiffs claim they are not challenging a policy or lack thereof, they are. They assert that the Wardens knew of the increased danger to sex offenders but (1) did not put policies in place to protect sex offenders, (2) did not house sex offenders separately from gang drop-outs, and (3) did not create a system of ensuring a prisoners' offense was kept secret. (Doc. 1; Doc. 35 at 11.) Plaintiffs allege the Wardens moved Smith to the SHU, and knew that he and Giovanni were placed together, but never allege that either Warden was aware of the threats to Smith. To prevent unconstitutional action according to these allegations, the Wardens would have had to initiate policy changes related to sex offenders and gang drop-outs.

Moreover, as the Wardens point out, the records on the Public Access to Court Electronic Records ("PACER") show that Giovanni was not a convicted gang member as alleged by Plaintiffs but – like Smith – was a sex offender, *United States v. Giovanni*, Case No. CR-14-00267-SNLJ-1, Doc. 60 (E.D. Mo. Oct. 7, 2015), so it is questionable that the simple placement of the two together would cause the Wardens alarm absent the additional knowledge of Giovanni's threats. Plaintiffs also claim that under BOP policy the Wardens could have placed Smith in alternative housing if the SHU was too full, but again, this does not allege the Wardens knew of any direct threat of harm or that not moving Smith to alternative housing would be a constitutional violation.

Furthermore, Plaintiffs argue they are permitted bring a claim against the Wardens under the theory of supervisory liability, and cite to a few cases where supervisory liability was permitted under *Bivens*. But, the cases are pre-*Iqbal* and *Ziglar*, which both explicitly state there is no vicarious liability in *Bivens* claims. In short, no facts allege that the Wardens were personally responsible for the move and the Wardens cannot be held personally accountable for the unconstitutional actions of their employees.

Plaintiffs also argue that Smith's rights were clearly-established because inmates have a right to protection from harm from other inmates. But, the Wardens assert that there is no clearly established law putting a reasonable officer on notice that failing to enact policies regarding housing of sex offenders is a violation of a constitutional right. There is no case on point giving the Wardens notice that their inaction was a constitutional violation. *Emmons v. City of Escondido*, __F.3d__, 2019 WL 1810765, at *3 (9th Cir. Apr. 25, 2019) ("[L]iability will not attach unless there exists 'a case where an officer acting under similar circumstances . . . was held to have violated [a Constitutional right].") (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam)). Therefore, McCormick and Shartle may not be sued under *Bivens* and are covered by qualified immunity.

Because the Court finds that the Wardens are protected by qualified immunity, it does not address the argument that Defendant McClintock should be dismissed because she was not acting Warden during the time in question.

## IV. DISCOVERY DEADLINES

**IT IS HEREBY ORDERED**:

A.  This case is subject to the Mandatory Initial Discovery Pilot Project ("MIDP") implemented by General Order 17-08.[1] The parties must comply with the requirements of the MIDP, and need not make the initial disclosures required by Federal Rule of Civil Procedure 26(a). If responses required by the MIDP have not been exchanged, they shall be exchanged by **Sunday, July 07, 2019.** To satisfy the requirements of Rule 26(a), the parties shall file a Notice of Initial Disclosure with the Clerk of the Court, rather than copies of the actual disclosures.

B.  Parties are given until Monday, October 14, 2019, for leave to move to **join**

---

[1] General Order 17-08 implements the MIDP and should be reviewed carefully. It requires parties to timely supplement their MIDP responses as new information is discovered. Parties who fail to timely disclose relevant information will be precluded from using it in the case and may be subject to other sanctions. Parties who unreasonably postpone disclosure of relevant information to the end of the discovery period will also be subject to sanctions.

1 **additional parties**. Parties are given until Monday, October 14, 2019, to move to **amend pleadings**. Thereafter, the Court will not entertain these motions only for good cause under Fed.R.Civ.P 16.

  C. Plaintiffs shall disclose the names of the **expert witnesses** and expert reports to be used at trial pursuant to the provisions of Rule 26(a)(2) and (3), Fed.R.Civ.P., on or before **Monday, January 13, 2020**. Defendants shall have up to **Thursday, February 13, 2020**, to disclose **rebuttal experts** and their reports. **All other witnesses** shall be disclosed on or before **Monday, January 13, 2020**.

  D. Counsel shall submit to the Court a brief **Joint Settlement Status Report** on or before **Friday, September 27, 2019**, and **every 45 days thereafter**.

  E. All **discovery**, including final supplementation of discovery responses under the MIDP as required by Part A ¶8 of General Order 17-08, answers to interrogatories, production of documents, depositions, and requests for admissions, must be completed by **Thursday, March 12, 2020**.

  Parties are directed to LRCiv 7.2(j), which prohibits filing discovery motions unless parties have first met to resolve any discovery difficulties. If a discovery dispute arises which cannot be resolved by the parties, the parties shall notify the Judge's Law Clerk by telephone at (520) 205-4541. The Court will promptly resolve the problem by scheduling a telephonic conference or by having the parties file motions with the required certifying statement.

  F. **Dispositive motions** shall be filed on or before **Monday, April 13, 2020**. Pursuant to LRCiv 7.2 of the Local Rules, counsel may file a motion, reponse, and reply. No other (supplemental) pleading will be considered by the Court, unless a motion to file said pleading is granted by the Court. All pleadings submitted for the Court's review and decision must comply with the filing, time, and form requirements of the Local Rules. *See* LRCiv 12.1, 56.1. Additionally, any pleading which is submitted with more than one exhibit must be accompanied by a Table of Contents. The exhibits must be indexed with tabs which correspond to the Table of Contents. Absent exigent circumstances, the Court

will not consider pleadings which do not conform to these requirements.

G. Counsel shall file a proposed **Joint Pretrial Order** on or before **Wednesday, May 13, 2020**, unless dispositive motions are filed. If dispositive motions are filed, the Joint Pretrial Order shall be filed 30 days from the filing date of the Court's order on the dispositive motions.

H. **Motions in limine** shall be filed no later than **two weeks after the filing of the proposed Joint Pretrial Orde**r. Responses to motions in limine are due ten days after the motion in limine is filed. No replies are permitted. Any hearing on motions in limine will be set at the Pretrial Conference for later hearing.

I. The **Pretrial Conference** will be set upon the filing of the proposed Pretrial Order, and the Trial Date in this matter will be set at the Pretrial Conference.

J. Counsel cannot, without the Court's approval, extend the deadlines imposed by the Court. All motions/requests for extension of time shall comply with LRCiv 7.3. All motions/requests for extension of discovery deadlines must include a summary of the discovery conducted to date, the anticipated discovery to be done if the request is granted, and the reasons why discovery has not been completed within the deadline.

K. All motions, responses and replies must comply with LRCiv 7.2(e). All requests for page extensions must be filed at least one week prior to the filing of the substantive document, must note how many prior extensions have been requested, and must state the position of all parties. Any page extension requests filed within one-week of the substantive document will be denied.

L. All motions that are non-dispositive must have a proposed order attached in accordance with Local Rule 7.1(b)(2)-(3).

M. The parties shall provide to the Court a **bound hard copy** of any filing that is more than **ten (10) pages** in length. This applies to all attachments, appendices, and indices that are included with a motion filed with the Court. If the hard copy contains multiple documents, each document shall be individually tabbed.

N. Parties are specifically advised that pursuant to LRCiv 7.2(i), "[i]f a motion

does not conform in all substantial respects with the requirements of this Local Rule, or if the unrepresented party or counsel does not serve and file the required answering memoranda, or if the unrepresented party or counsel fails to appear at the time and place assigned for oral argument, such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." In addition, willful failure to comply with any of the terms of this order may result in dismissal of this action without further notice to the Plaintiffs, or sanctions upon the Defendants. Fed.R.Civ.P. 16(f)(C) & 37(b)(2).

**IT IS FURTHER ORDERED**:

1. This case is **consolidated** with the FTCA claim in **Case Number CV-19-00325-RCC. Any future filings shall be docketed in Case Number CV-18-00323-RCC**.

2. Within thirty days of the date of this Order the Department of Justice shall disclose to Plaintiffs the information detailed in this Order. Upon receipt of the information Plaintiffs shall file a status report with the Court briefly documenting the discovery received and Plaintiffs' opinion about the sufficiency of discovery.

3. Plaintiffs' **Motion for Leave to File Second Amended Complaint** is **DENIED** without prejudice. (Doc. 41.) Plaintiffs may file a Motion to Amend within fourteen (14) days of Plaintiffs' receipt of information from the Department of Justice.

4. Defendants Shartle and McClintock's **Motion to Dismiss** is **GRANTED**. (Doc. 30.) Shartle and McClintock are dismissed from this case. The Clerk of Court shall docket accordingly.

Dated this 28th day of June, 2019.

_____
Honorable Raner C. Collins
Senior United States District Judge