**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabrina Smith, et al., | No. CV-18-00323-TUC-RCC |
| Plaintiffs, | **ORDER** |
| v. | |
| John T. Shartle, et al., | |
| Defendants. | |

Pending before the Court is Defendants Shartle and McCintock's ("Wardens") Motion to Amend/Correct Order Denying Plaintiffs' Motion for Reconsideration (Doc. 49) and Plaintiffs' Renewed Motion to Reconsider Order on Motion to Dismiss (Doc. 57). The Court will grant Defendants' motion and deny Plaintiffs'.

**PROCEDURAL HISTORY**

On March 15, 2019, Plaintiffs filed a First Amended Complaint alleging that the Wardens failed to protect inmate Clinton Dewayne Smith under the Eighth Amendment, and unconstitutionally denied Plaintiffs' right to companionship and familial association under the Fifth Amendment. (Doc. 28.) Plaintiffs claim the Wardens did not prevent Smith from being housed with Romeo Giovanni, a violent gang member who threatened to kill any sex offender placed in his cell. *Id*. After the threat, Bureau of Prisons employees transferred Smith, a convicted sex offender, to Giovanni's cell; within twenty-four hours, Giovanni had murdered Smith. *Id*. at 4.

The Wardens filed a Motion to Dismiss to which Plaintiffs responded on April 29,

2019, arguing that the motion should be denied because: (1) Plaintiffs' *Bivens* claims did not present a new context, (2) there were no "special factors" preventing the Court from recognizing the claim, and (3) the Wardens were not subject to qualified immunity. (Doc. 35.) Plaintiffs generally stated that the Wardens knew of the risk of violence against sex offenders and of Smith's assignment in the Special Housing Unit, and failed to take measures to prevent the housing of sex offenders with gang members. (Doc. 35 at 11.) Plaintiffs' response did not suggest that they had additional facts demonstrating the Wardens' personal knowledge of Smith's placement with Giovanni. The motion was fully briefed on May 15, 2019.

On June 21, 2019, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint. (Doc. 41-2.) Plaintiffs conceded that the additional information included in the Second Amended Complaint had been received two months prior, but that they had waited to ask for leave to amend because they anticipated further disclosure. (Doc. 41-3 at 7.) They suggested the additional facts asserted in the Second Amended Complaint would help resolve the pending Motion to Dismiss because the new facts showed that the Wardens knew about the risk of harm posed to Smith by placing him with a gang member. *Id*. at 8.

On June 28, 2019, the Court denied Plaintiffs' motion for leave to amend without prejudice, finding that because Plaintiffs would likely obtain the names of the John Doe employees (aside from the Wardens) through discovery, in the interests of judicial economy, the Court would wait to evaluate the John Doe claims until Plaintiffs filed an amended complaint with the named individuals. (Doc. 44 at 2.)

The Court also granted the Wardens' Motion to Dismiss. *Id*. at 11. The Court found that Plaintiffs' suit asserted that the Wardens failed to formulate a policy for housing sex offenders. *Id*. at 3, 7. This argument, the Court stated, improperly extended the *Bivens* remedy to a new context. *Id*. at 3. In addition, the Court found that "special factors" weighed against expanding a *Bivens* remedy to this case. *Id*. at 6. Moreover, the Wardens enjoyed qualified immunity because (1) there was no clearly established law

putting the Wardens on notice that failing to implement a policy was unlawful, and (2) the Wardens were not liable for the actions of their subordinates. *Id*. at 6. The Court noted that Plaintiffs had not alleged facts indicating that the Wardens knew that Giovanni and Smith were placed together, and even if they had, Giovanni was also a convicted sex offender "so it is questionable that the simple placement of the two together would cause the Wardens alarm absent the additional knowledge of Giovanni's threats." *Id*. at 7.

On July 12, 2019, Plaintiffs filed a Motion for Reconsideration, asking the Court to reconsider the Wardens' dismissal until further discovery was received and a Third Amended Complaint filed. (Doc. 47-1 at 10.) The Court denied the motion as moot, stating that the dismissal was without prejudice under Federal Rule of Civil Procedure 41(a)(2). (Doc. 48.) The Wardens pointed out that dismissal by the Court is under Rule 41(b) and the dismissal is with prejudice. (Doc. 49 at 2.) With no opposition, the Court struck the Order that found Plaintiffs' motion moot, and permitted Plaintiffs to refile their Motion for Reconsideration. (Doc. 56.)

Subsequently, Plaintiffs filed a Motion to Compel Disclosure from the Department of Justice ("DOJ"). (Doc. 55) The motion detailed alleged deficiencies in the production of information about employees involved in Smith's transfer. (Doc. 55.) Yet, it did not indicate that the DOJ was withholding information about the Wardens, only that of the unnamed John Does.

Plaintiffs renewed Motion for Reconsideration, filed August 15, 2019, claimed that because the Court dismissed the Second Amended Complaint without consideration, it had not evaluated additional material facts which alleged that the Wardens had personal knowledge of the risks posed to Smith by placing him with Giovanni. (Doc. 57.) Plaintiffs again asked the Court to hold off on dismissing the claims until they received further discovery and filed a Third Amended Complaint. (Doc. 57-1 at 11.)

///

///

///

- **STANDARD OF REVIEW**
  - ***Motion to Reconsider***

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Granting such a motion may occur when the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003). A motion for reconsideration need not be granted if it asks the district court merely "'to rethink what the court had already thought through – rightly or wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

  - ***Bivens Claims***

Previously, an inmate seeking damages for alleged violations of his Eighth Amendment right to safety would have a cause of action for such claims. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, in light of *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843 (2017), the Court must now consider whether a *Bivens* cause of action exists at all. *See Hernandez v. Mesa*, __ U.S. __, __, 137 S Ct. 2003, 2006 (2017) ("The Court turns first to the *Bivens* question, which is 'antecedent' to other questions presented." (quoting *Wood v. Moss*, __ U.S. __, __, 134 S. Ct. 2066, 2066 (2014))). In *Ziglar*, the Supreme Court cautioned that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity" and set forth a two-part test to determine whether a *Bivens* claim may proceed. 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). A court must first

consider whether the claim at issue extends *Bivens* in a new context from previously established *Bivens* cases, and, if so, a court must then apply a "special factors analysis" to determine whether there are "special factors counselling hesitation" in expanding *Bivens*. *Id*. at 1857, 1859-60.

It is immaterial whether this Court, the Ninth Circuit Court of Appeals, or other district and appellate courts have recognized a particular *Bivens* claim; the Supreme Court has stated that "[t]he proper test for determining whether a case presents a new *Bivens* context is as follows: If the case is different in a meaningful way from previous *Bivens* cases *decided by this Court*, then the context is new." *Id*. at 1859 (emphasis added).

The Supreme Court explained that:

> [a] case might differ in a meaningful way because of the rank of officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1860. This list is not exhaustive, and the "new-context inquiry is easily satisfied." *Id*. at 1865.

In *Bivens*, the Supreme Court recognized an implied cause of action for damages for persons injured by federal officers who violated the Fourth Amendment prohibition against unreasonable searches and seizures. *See Bivens*, 403 U.S. at 396-97. Subsequently, the Supreme Court has only recognized *Bivens* claims under the Fifth Amendment Due Process Clause by an administrative assistant who claimed a Congressman had discriminated against her because of her gender, *Davis v. Passman*, 442 U.S. 228 (1979), and under the Eighth Amendment prohibition against cruel and unusual punishment by a prisoner who claimed federal prison officials had failed to treat his asthma, *Carlson v. Green*, 446 U.S. 14 (1980). "These three cases . . . represent the

only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

If the claim at issue would extend *Bivens* in a new context, a court must then analyze whether there are "special factors counselling hesitation" in expanding *Bivens*. *Id*. at 1857. When performing the special-factors analysis, courts must consider "'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id*. (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). "The answer most often will be Congress. When an issue 'involves a host of considerations that must be weighed and appraised,' it should be committed to 'those who write the laws' rather than 'those who interpret them.'" *Id*. (quoting *Bush*, 462 U.S. at 380).

In conducting the special factors inquiry, the court "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58.

> [I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system of enforcing the law and correcting a wrong, the courts *must* refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

*Id*. at 1858 (emphasis added). This requires courts to assess the impact on governmental operations systemwide, including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id*.

"Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim." *Buenrostro v. Fajardo*, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017), *aff'd*, 770 F. App'x 807 (9th Cir. 2019). Congress passed the Prison Litigation Reform Act ("PLRA"), which "suggests that Congress does not want a damages remedy, which is itself a factor counseling hesitation." *Rager v. Augustine*, 2017 WL 6627416, at *18 (N.D. Fla. Nov. 8, 2017), *report and recommendation adopted*, 2017 WL 6627784 (N.D. Fla. Dec. 28, 2017); *Kinney v.*

*Langford*, No. 2:18-cv-01995-SVW (MAA), 2019 WL 4677492, at *6 (C.D. Cal. July 30, 2019), *report and recommendation adopted*, 2019 WL 4673214 (C.D. Cal. Sept. 23, 2019). Indeed, the Supreme Court noted:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . .[T]he Act itself does not provide for standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citation omitted).[1]

- **DISCUSSION**

The factors guiding reconsideration do not weigh in Plaintiffs' favor. Plaintiffs do not present newly-discovered facts, but simply attempt to restate arguments previously made in their response to the Motion to Dismiss. Insofar as Plaintiffs are trying to incorporate new facts, this constitutes an attempt to "present evidence for the first time when [it] could reasonably have been raised" in response to the Motion to Dismiss. *See Kona Enters., Inc.*, 229 F.3d at 890. Plaintiffs were in possession of the newly-alleged facts when they responded to the Motion to Dismiss and filed their proposed Amended

---

[1] The Court agrees with Plaintiffs; the PLRA is not a right to relief itself, but rather a limit on when inmates may raise federal claims. *See Ziglar v. Abassi*, 137 S. Ct. 1843, 1865 (2017). But, the PLRA prohibits a federal damages remedy when alternate remedies – such as an administrative grievance, habeas corpus, or an injunction – are available to prisoners. *See Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018) (finding the plaintiff had alternative means of relief under 28 U.S.C. §§ 541.7 and 542.10(a)); *Buenrostro*, 2017 WL 6033469, at *3 (where inmate alleged violation of his Fifth Amendment due process rights and retaliation in violation of the First Amendment, "[i]t is clear that the Plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief"); *see also Ziglar*, 137 S. Ct. at 1865 ("And there might have been alternative remedies available here, for example, a writ of habeas corpus, an injunction requiring the warden to bring his prison into compliance with the regulations discussed above; or some other form of equitable relief."); *Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) ("A *Bivens* action is not necessary in suits . . . which seek equitable relief against the federal government, because the Administrative Procedure Act waives sovereign immunity for such claims."). These are the remedies the Court spoke of in its previous Order.

Complaint.

But, Plaintiffs argue, the Court should reconsider its dismissal because it had not reviewed these additional facts when it dismissed the Wardens. (Doc. 61 at 4.) This is an inappropriate, piecemeal presentation of facts and argument. It wastes the judicial resources and forces the Court to reassess a determined motion because it was not adequately argued in the first instance. The Court need not reconsider an Order simply because Plaintiffs failed to argue and present evidence that was available to them. *See Kona Enters., Inc.*, 229 F.3d at 890.

Furthermore, the Court does not find it appropriate to extend a remedy in this case. This matter presents a new *Bivens* context, differing in a meaningful way from other cases permitting *Bivens* remedies. In essence, Plaintiffs' amended claims still allege that the Wardens violated their Fifth and Eighth Amendment rights because the Wardens failed to create a policy preventing sex offenders from being housed with violent gang members. This matter does not raise the Fourth Amendment issues raised in *Bivens*, 403 U.S. at 396-97; it is not a Fifth Amendment gender discrimination claim as in *Davis v. Passman*, 442 U.S. 228 (1979), and does not allege that the Wardens failed to provide medical care as in *Carlson*, 446 U.S. at 14. *See Schwarz v. Meinberg*, No. 17-55298, __ F. App'x __, 2019 WL 581575, at *1 (9th Cir. Feb. 13, 2019) (Eighth Amendment claim about unsanitary cell conditions presents new *Bivens* context which differs from *Carlson* because it did not raise a failure to treat medical conditions); *see also Kinney v. Langford*, No. 2:18-cv-01995-SVW (MAA), 2019 WL 4677492, at *4 (C.D. Cal. July 30, 2019), *report and recommendation adopted*, 2019 WL 4673214 (C.D. Cal. Sept. 23, 2019) (Fifth and Eighth Amendment allegations raised different factual basis constituting new *Bivens* context).

Next, special factors weigh against extending *Bivens* in this case. Congress is in a better position to decide whether to provide a remedy in this matter. In addition, given the interplay of the burdens, costs, and consequences of extending a *Bivens* remedy to failure to prevent the housing of two sex offenders when one is also a gang member, Congress is

more equipped to decide whether to permit a damages remedy here. It is not for this Court to weigh whether to permit a remedy in this instance. *See Ziglar*, 137 S. Ct. at 1865.

Regardless, Plaintiffs' added allegations in the proposed Second Amended Complaint does not persuade the Court that it must reconsider dismissal. Plaintiffs' amended facts allege: (1) the Wardens knew that Giovanni was classified (a) as a gang member and (b) for separation; (2) the Wardens knew that gang affiliates had incentive to kill sex offenders such as Smith; and (3) the Wardens reviewed Giovanni's file and past violent behavior when he was transferred to USP-Tucson. Yet, the Motion to Reconsider and proposed Second Amended Complaint do not allege that Plaintiffs did not have this information available when they responded to the Wardens' Motion to Dismiss. They also do not allege that the Wardens knew of Giovanni's direct threat to cause harm to Smith. Nor do they submit that the Wardens were responsible for placing Giovanni and Smith together. In sum, the proposed Second Amendment still relies upon the failure to instill a policy preventing a gang member (who was also a sex offender) from being housed with another sex offender. Moreover, neither the Motion to Compel Discovery nor the Renewed Motion to Reconsider suggest that given additional discovery, Plaintiffs would likely be able to add factual allegations that show specific participation in the placement of Smith with Giovanni. Finally, Plaintiffs have not argued that there is case law on point defeating qualified immunity. (*See* Doc. 57-1 at 10.) They have therefore not remedied the issues which led to dismissal.

The Court finds that its analysis is the same upon review. Plaintiffs' claims challenge the Wardens' failure to create policy. To allow the claims to proceed would inappropriately extend *Bivens* to a new context.

Accordingly, IT IS ORDERED:

1. Defendants Shartle and McCintock's Motion to Amend/Correct Order Denying Plaintiffs' Motion for Reconsideration is GRANTED. (Doc. 49.)

2. Plaintiffs' Renewed Motion to Reconsider Order on Motion to Dismiss is

1. DENIED. (Doc. 57.)
2. 3. The deadline for Plaintiffs' Third Amended Complaint shall be determined upon the resolution of Plaintiffs' Motion to Compel Discovery (Doc. 55).

Dated this 31st day of October, 2019.

_____
Honorable Raner C. Collins
Senior United States District Judge