**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Estate of Clinton Dewayne Smith, et al., | No. CV-18-00323-TUC-RCC |
| Plaintiffs, | **ORDER** |
| v. | |
| John T. Shartle, et al., | |
| Defendants. | |

Currently before the Court is Defendant United States of America's ("Government") Motion to Dismiss for Lack of Jurisdiction. (Doc. 64.) The Government argues that this matter should be dismissed because the Bureau of Prisons ("BOP") employees' cell assignment and safety decisions are immune from suit under the Federal Tort Claims Act ("FTCA"). *Id.* The Court held oral argument on February 21, 2020. Upon consideration of the briefs and argument, the Court will deny the motion.

## I. PROCEDURAL BACKGROUND

Convicted sex offender Clinton Dewayne Smith was transferred to the SHU between June 28 and July 4, 2016. (Doc. 1 at p. 3, ¶ 6, No. CV-19-00325-RCC.)[1] Inmate Romeo Giovanni, a former gang member, vehemently opposed being housed with Smith. (*Id.* at ¶ 8.) Giovanni stated to BOP employees that if placed in the same cell, he would kill Smith. (*Id.*) Nevertheless, BOP employees placed the two together. (*Id.* at ¶ 9.) By July 5, 2016, Giovanni followed through on his threats, murdering Smith. (*Id.* at p. 4, ¶

---
[1] This matter was consolidated with Case No. CV-18-00323-RCC; however, the operative Complaint against the Government is located in Case No. CV-19-00325-RCC.

10.) The BOP employees were unaware of Smith's death until Giovanni notified them by hitting a distress button in the cell. (*Id.* at p. 35, ¶ 187.)

Plaintiffs' Complaint alleges that BOP employees' placement of Smith with Giovanni was negligent, and this negligence led to Smith's death. (*Id.* at p 44-47, pp. 238-59.)

The Government filed the instant Motion to Dismiss, arguing that (1) Plaintiffs' claims are not viable under the FTCA because negligent cell assignment has no private analogue under Arizona law, and (2) BOP's inmate housing and safety decisions are immune from suit under the discretionary function exception to the FTCA. (Doc. 64.)

## II. STANDARD OF REVIEW FOR FTCA CLAIMS

In general, the United States enjoys sovereign immunity and cannot be sued unless it has explicitly waived its immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides a waiver of immunity for the tortious actions of governmental employees. 28 U.S.C. § 2679; *Fed. Deposit Ins. Corp. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998). Under the FTCA, the Government can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *United States. v. Olsen,* 546 U.S. 43, 44 (2005). This broad waiver is limited, however, by the discretionary function exception. This exception grants the Government immunity from governmental employees' actions "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a).

"[T]o determine whether the discretionary function exception applies, the court must engage in a two-step inquiry." *Nurse v. United States,* 226 F.3d 996, 1001 (9th Cir. 2000). First, the court must decide "whether the challenged conduct involves an element of judgment or choice." *Id.* "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal citations and

quotation marks omitted). But an action is discretionary when there are no directives that "dictate[] the precise manner in which the agency is to complete the challenged task." *Green v. United States*, 630 F.3d 1245, 1249-50 (9th Cir. 2011).

If the action is discretionary, the court then considers whether the action "is of the kind that the discretionary function exception was designed to shield." *Id.* (citing *Gaubert*, 499 U.S. at 322-23). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, . . . the exception protects only governmental actions and decisions based on public policy." *Gaubert*, 499 U.S. at 323 (internal citation and quotation marks omitted). When actions are discretionary, there is a presumption that the actions are grounded in policy considerations. *Id.* at 323-24. And so, "[f]or a[n FTCA] complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* at 324-25.

"If the challenged action satisfies both []prongs, that action is immune from suit—and federal courts lack subject matter jurisdiction—even if the court thinks the government abused its discretion or made the wrong choice." *Green*, 630 F.3d at 1249-50.

### III. PRIVATE PERSON ANALOGUE

To state a claim under the FTCA, Plaintiffs' allegations must first demonstrate that "a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963); 28 U.S.C. § 1346(b). This means that "the FTCA applies only if there is a persuasive analogy with private conduct." *See Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992). Since an FTCA claim must raise liability under state law, "[t]he breach of a duty created by federal law is not, by itself, actionable under the FTCA." *Francois v. United States*, CV-16-02936-PHX-BSB, 2017 WL 467976, at *3 (D. Ariz. Feb. 3, 2017) (quoting *Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995). Furthermore, "[a]lthough the federal government 'could never

be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.'" *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986).

During oral arguments Plaintiffs suggested that the liability imposed upon Arizona nursing home employees presented like circumstances to those raised here. They claimed that a private nursing home employee who cares for a vulnerable elderly person would be liable if that employee (1) negligently placed an elderly patient in a room with another person, (2) knowing that the person had made threats of harm, and (3) as a result of being placed together the elderly patient was in fact harmed. Defendant countered that Plaintiffs have not pointed to any state statute or case law that demonstrates that there is a state law equivalent supporting their example.

But, Arizona Revised Statutes section 46-455 does impose civil liability on private nursing home employees under circumstances like those presented here. The statute articulates that "[a] person who has been employed to provide care . . . to a vulnerable adult who causes or permits the life of the adult to be endangered . . . by neglect" may be subject to civil liability. Ariz. Rev. Stat. §§ 46-455(A); 46-455(K).

Like a nursing facility employee, a BOP employee is tasked with the care of persons who are dependent upon them to make daily housing and safety determinations. And, like nursing care employees, BOP has a duty to ensure the safety of the persons who reside at the facility. *See* 28 U.S.C. § 4042(2). So, just as a private nursing home employee in Arizona could be held accountable when the employee ignored physical threats to a patient, placed the patient with the person making the threats, and injury resulted; so too could the Government.

Plaintiffs have presented a persuasive private person analogy that provides liability under Arizona law.

**IV. DISCRETIONARY FUNCTION EXCEPTION**

By statute, the BOP must "provide suitable quarters and provide for the safekeeping, care, and subsistence of all [prisoners]." 28 U.S.C. § 4042(2). Many courts have determined that BOP decisions about inmate housing and safety are discretionary

and therefore precluded from suit under the FTCA. *See e.g., Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."); *Merz v. United States*, 532 F. App'x 677, 678 (9th Cir. 2013) (decision to place inmate in cell with another inmate who attacked him was not subject to the liability under the FTCA); *Mitchell v. United States*, 149 F. Supp. 2d 1111, 1114 (D. Ariz. 1999) (movement of inmates discretionary and protected from suit); *Whitefeather v. United States*, CV 12-00270-TUC-JGZ, Doc. 32 at 6 (D. Ariz. Sept. 11, 2013) (granting summary judgment because "BOP's housing decisions at USP Tucson were discretionary in nature because no federal statute, regulation or policy specifically prescribes the housing designation of inmates"); *Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018) (housing choices discretionary); *Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004) (BOP officers have discretion regarding how to protect inmates); *Santana-Rosa v. United States*, 335 F.3d 39, 43-44 (1st Cir. 2003) (same); *Cohen v. United States*, 151 F.3d 1338, 1143 (11th Cir. 1998) (how to provide safe housing for inmates is not specifically mandated); *Calderon v. United States*, 123 F.3d at 950 (decisions about how to protect inmates are not specifically defined); *see also Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 795-96 (8th Cir. 1998) (C.F.R. regulations about inmate placement are discretionary). For when it comes to the safety and security of inmates, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

However, when a plaintiff can point to a specific measure that an official needed to follow, courts have determined that the issue of whether the regulation was indeed mandatory precludes dismissal based on the FTCA discretionary function exception. *See Alfrey v. United States*, 276 F.3d 557, 564 (9th Cir. 2002) (finding response to inmate threat was discretionary, but factual issue remained as to whether a Central Inmate Monitoring evaluation prior to placement was mandatory); *Doe v. United States*, 510 F. App'x 614, 616 (9th Cir. 2013) (granting of summary judgment reversed and remanded

because officer suggested that there was a mandatory policy in place that would have prevented plaintiff's abuse); *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007) (usually the exception applies to cell assignment, but in this case it did not apply because "there [was] a specific policy in place that constrained the decision-making ability of the prison officials.").

### a. Discretionary Action

Plaintiffs argue there may be some non-mandatory decisions in BOP policy that have yet to be disclosed. They also think some officials at BOP may not have had discretion for certain actions. Therefore, these actions would not be covered by the discretionary function exception. Plaintiffs would like further discovery to find out if these mandatory policies exist.

Defendant claims Plaintiffs cannot point to any mandatory measures despite disclosure of all the pertinent statutes, regulations, and policies because there are none. In addition, Defendant claims, there is an abundance of case law demonstrating that safety and cell assignment determinations are discretionary measures not subject to liability under the FTCA.

#### i. *Statutes, Regulations, and Policies*

The Court recognizes that many of the statutes, regulations, and policies at issue here are readily available and give BOP considerable latitude when making housing and safety decisions. This suggests discretion. Furthermore, Defendant has averred that they have identified all the applicable statutes, regulations, and policies. However, Plaintiffs are not challenging the disclosed policies. Instead, they argue that what BOP has omitted suggests undisclosed, mandatory policies exist. The Court, therefore, will address Plaintiffs' allegations.

#### ii. *Mandatory Review of Information*

First, some of the BOP's Program Statements have been redacted and Plaintiffs cite to the surrounding unredacted portions to show that the redactions may contain other mandatory measures. For instance, they point to the Program Statement that requires Lieutenants utilize "all available resources and information" in cell assignment decisions.

(Doc. 68 at 13.) They claim that "all" means that there are mandatory things BOP must review before determining cell assignments, which demonstrates there is a proper way to conduct cell placement. (*Id.*) Based on the record before the Court, it is impossible to conclude that the redacted portions do not mandate the review of specific documents in a way that eliminates discretion.

This is similar to *Alfrey v. United States*, 276 F.3d 557 (9th Cir. 2002). In *Alfrey*, the court found that it was unclear based on the available evidence whether a Central Inmate Monitoring evaluation must be performed prior to inmate placement. *Id.* Likewise, in this case because there is plausible mandatory language and unredacted portions of the Program Statement, the Court cannot determine whether there were certain documents that had to be reviewed before placement, and further discovery is warranted before making this determination.

### *iii. Separation Requirements*

Next, Plaintiffs note that the Special Post Order mandating "all available resources" does so because there are "many separation requirements . . . in [the SHU.]" (Doc. 64-2 at 62). Plaintiffs claim the undisclosed separation requirements may also be mandatory and may have specifically prohibited Giovanni from being placed with Smith because of his separation classification, likely due to prior acts of violence. (Doc. 1 at 38-39, ¶¶ 207-08, 210.) Like the mandatory review of information, at this juncture there is factual issue as to whether Giovanni's history mandated separation. This issue warrants further discovery.

### *iv. Other Procedures*

Finally, Plaintiffs claim that there seem to be other mandatory initiatives that guide housing inmates in the SHU. (Doc. 68 at 13-14.) They note that the Special Post Order on Sexual Offender/Protective Custody indicates placement will be "methodical," and Plaintiff claims that BOP has a policy to check if single beds are available before placement. (*Id.*) Further, Plaintiffs claim that it appears that inmates are asked whether they would accept the cell mate, and when an inmate refuses, BOP will find another cellmate. (*Id.* at 14.) In this case, Giovanni was asked earlier in the day whether he would

accept another inmate who was a sex offender. (Doc. 1 at p. 26, ¶ 128; p. 29, ¶¶146-49.) When he refused BOP placed the inmate elsewhere. (*Id.* at p. 33, ¶ 167.) Smith was not so lucky. If these alleged policies exist, Plaintiffs have a good argument that Smith should not have been placed with Giovanni. Again, the omissions preclude the Court from determining conclusively whether the term "methodical" shows the evaluations were mandatory or discretionary.

> *v. Monitoring Inmates*

Moreover, Plaintiffs' Complaint claims that BOP officers did not follow the measures defined in BOP Program Statement P5270.10. (Doc. 1 at p. 40, ¶ 218.) This directive, they claim, mandates a daily check on inmates by the BOP Lieutenant and BOP personnel. (*Id.*) Plaintiffs believe no one from BOP performed a daily check during the time that Smith was murdered. (*Id.* at p. 41, ¶ 222.)

This situation is like *Middleton v. U.S. Fed. Bureau of Prisons*, 658 F. App'x 167, 171-72 (3d Cir. Aug. 15, 2016), where the Third Circuit vacated the district court's granting of a motion to dismiss because the complaint alleged that BOP had Post Orders regarding pat downs that may have been mandatory. Similarly, in *Rich v. United States*, 811 F.3d 140, 147 (4th Cir. 2015), the Fourth Circuit remanded for further discovery where Post Orders suggested specific requirements that officers may have had to follow when performing searches. Like these circuits, the Ninth Circuit has also remanded FTCA claims for further discovery because the suggestion of a mandatory policy prevented the court from determining whether the action was covered by the discretionary function exception. *Doe*, 510 F. App'x at 616.

In defense, the Government merely reiterates its assertion that the discretionary function exception applies to BOP's housing decisions. (Doc. 75 at p. 11-14.) This does not, however, address monitoring measures that should have been taken after officers have placed an inmate in housing. And Defendant has offered no affidavits stating this Program Statement was not mandatory, nor provided any regulations that suggest monitoring inmates was within BOP officials' discretion. *See e.g., Keller v. United*

*States*, 771 F.3d 1021, 1024 (7th Cir. 2014) (remanding for further discovery where Program statements were redacted).

Plaintiffs' allegation that BOP failed to perform a mandatory monitoring of Smith presents a plausible non-discretionary action. The Court finds that further discovery as to BOP monitoring measures may take this claim outside the purview of the discretionary function exception if it is, in fact, mandatory. This prevents dismissal.

      b. <u>Public Policy</u>

Plaintiffs make no argument that inmate housing decisions are not founded in policy concerns. In fact, cell assignment and security measures in prisons implicate multiple policy concerns. *See Mitchell v. United States*, 149 F. Supp. 2d 1111, 1114 (D. Ariz. 1999) ("Decisions . . . including the number of guards, . . . and tactical choices made surrounding the movement of inmates are judgment calls and choices based on policy determinations that seek to accommodate safety goals and the reality of finite agency resources.").

In sum, based on the record before the Court it is impossible to conclude whether the discretionary function exception applies. Therefore, dismissal at this stage is inappropriate.

## V. NEGLIGENT GUARD THEORY

Alternatively, Plaintiffs argue that they have raised a viable FTCA claim because BOP employees' cell assignment and failure to check on Smith was due to laziness. (Doc. 68 at p. 17.)

Some courts have found that a guard's actions are not immune from suit under the discretionary function exception when the "negligent guard theory" applies. *See e.g.*, *Padilla v. United States*, No. LACV 09-05651, 2012 WL 12882367, at *6 (C.D. Cal. Oct. 9, 2012); *Middleton*, 658 F. App'x at 171-72; *Palay*, 349 F.3d 418, 430-32 (7th Cir. 2003); *Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000). The Supreme Court has explained that under the negligent guard theory, a governmental agent's actions may seem to be discretionary, but fail the policy prong of the exception's analysis because the specific actions "simply cannot be said to be based on the purposes that the regulatory

regime seeks to accomplish." *Padilla*, 2012 WL 12882367, at *6 (quoting *Gaubert*, 499 U.S. at 325). This may occur when officials perform discretionary duties in a lazy, careless, or inattentive matter. *Id.* (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 476 (2d Cir. 2006).

For instance, in *Padilla v. United States*, 2012 WL 12882367, at *7, prison guards placed Padilla with a cellmate after Padilla repeatedly requested to be separated and guards saw that the inmate had caused previous injury to Padilla. *Id.* at *2. Padilla was later killed by his cellmate. *Id.* The court distinguished this case from other similar cell assignment FTCA claims. *Id.* (comparing to *Alfrey*, 276 F.3d at 557 (BOP informed of verbal threat); *Calderon*, 123 F.3d at 947 (same)). Unlike mere threats, which are prospective rather than reflective, the known prior physical injury removed the guard's discretion, and "would have required staff to separate (them)." *Id.* at *8. The inaction of the guards after finding out about Padilla's injuries, combined with Padilla's repeated requests to be removed, could have no basis in furthering any governmental policies, such as inmate safety. *Id.* at 9.

Like *Padilla*, the Court finds that the negligent guard theory may also undermine Defendant's discretion here. While the guards here were not on notice of prior physical altercations between Smith and Giovanni, Plaintiffs assert that Giovanni had a history of violent behavior which would have required his separation. In addition, he made an unambiguous death threat against Smith. "[S]pecific and immediate threats against inmates are less likely to be the type of decision to be grounded [in policy concerns]." *Montez ex rel. Estate of Hearlson*, 359 F.3d at 398. To place Giovanni with Smith under these circumstances could be perceived as careless under the negligent guard theory.

Furthermore, the failure to monitor Smith after his transfer to the SHU may be subject to the negligent guard theory. The Court believes the Complaint adequately asserts (1) there was a policy mandating a BOP check on inmates, (2) BOP failed to do so, and (3) there is no explanation for BOP's failure. (Doc. 1 at p. 33, ¶ 168.) Furthermore, Plaintiffs allege that the SHU was short staffed over the Fourth of July weekend. (*Id.* at p. 33, ¶ 168.) These facts suggest that the guards may have been

inattentive, and perhaps lazy.

## VI. Constitutional Violations

Plaintiffs allege that their claims are not precluded because they raise constitutional violations; specifically, violations of the Fifth and Eighth Amendments. (Doc. 68 at 7-8.) A constitutional tort, however, is not actionable under 28 U.S.C. §1346(b) because it does not raise a claim that could be considered a violation of state law. *See F.D.I.C.*, 510 U.S. at 477-78 ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."). Therefore, Plaintiffs' FTCA claims cannot succeed on this basis.

## VII. Defendant's Unredacted Exhibits

The Court has reviewed the exhibits submitted for en camera review and finds that they do not change its analysis. The exhibits do not describe the various separation requirements eluded to in the Special Post Orders, nor define what sources should be utilized during housing determinations. Moreover, the redacted documents include information on defined monitoring schedules related to Plaintiff's claim. The disclosure only reinforces the Court's decision that it is too soon to dismiss this matter.

## VIII. Conclusion

The Court cannot grant a motion to dismiss based on the information currently available. The Court will allow discovery to proceed but may reevaluate Defendant's discretionary function exception argument should Defendant choose to file a dispositive motion.

Accordingly, IT IS ORDERED:

1. United States of America's Motion to Dismiss is DENIED. (Doc. 64.)

Dated this 9th day of March, 2020.

_____
Honorable Raner C. Collins
Senior United States District Judge