**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabrina Smith et al., | No. CV-18-00323-TUC-RCC |
| Plaintiffs, | **ORDER** |
| v. | |
| John T. Shartle et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' fourth amended *Bivens* complaint against Defendants John Domitrovich, Damian Tinnerello, Kenneth Schied, Erik Kurtz, Antonio Inclan, Ernesto Yanez, Garrett Merrell, Orlando Franco, Mark Dunham, Brandon Goodman, Sandra Montano, Ivan Ceniceros, Eleazor Islas, Joshua Beans, Justin Nazarovich, and FNU Davis ("*Bivens* Defendants"). (Doc. 109.) Alternatively, Defendants ask this Court to grant summary judgment on the basis that the *Bivens* claims are untimely. (*Id.* at 10.)

This matter has been thoroughly briefed and the Court finds oral argument will not aid in the resolution of the issues raised. *See* LR Civ. 7.2(f); Fed. R. Civ. P. 78(a); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."). As set forth below, the motion to dismiss is granted in part and denied in part.

### a. **Relevant Background**

On July 5, 2016, Clinton Dewayne Smith was discovered in his cell at USP Tucson.

Smith had apparently been strangled to death by his cellmate Romeo Giovanni. The facts as alleged indicate that Giovanni had for some time warned prison officials that he would harm, perhaps even kill, any sex offender he was housed with. Plaintiffs—Sabrina Smith and the Estate of Clinton Dewayne Smith—allege that prison officials were aware of these threats and nevertheless placed Smith in a cell with Giovanni after outing Smith as a sex offender. According to the complaint, Smith and Giovanni had several loud arguments that could be heard throughout the Special Housing Unit ("SHU") between June 28, 2016, when they were first placed together, and July 5, 2016, when Smith was found dead in his cell. Giovanni also repeatedly told officials that he would harm Smith and wrote threatening messages on the wall of their shared cell. Both men reportedly requested to be separated over the course of the week. Plaintiffs allege that *Bivens* Defendants—sixteen prison officials at USP Tucson—failed to separate Smith and Giovanni despite the known risk and failed to provide necessary protection to Smith. Plaintiffs have brought this *Bivens* action alleging that *Bivens* Defendants' failure to protect Smith violated the Fifth and Eighth Amendments.

On July 2, 2018, Plaintiffs filed their first *Bivens* complaint arising out of the events surrounding Smith's death. (Doc. 1.) The complaint was filed against two named wardens and seven un-named John Doe defendants. (*Id.*) At the time, Plaintiffs had not received the information necessary to correctly identify the officials responsible for the events outlined in the complaint. Nonetheless, Plaintiffs listed ten names in the complaint that they suspected were the names of the officials involved based on Plaintiffs' interviews with prison witnesses. (*Id.* at 7–8.) Plaintiffs were unable to confirm and correctly identify the names of the officials they had otherwise described in their original complaint until they received initial discovery from the Department of Justice. *Bivens* Defendants were thus named on December 5, 2019 in the third amendment complaint. (Doc. 73.)

Following Plaintiffs' fourth amendment complaint (Doc. 103), Defendants filed the present motion asking this Court to dismiss all claims or, in the alternative, grant summary judgment based on the statute of limitations. (Doc. 109.) Defendants urge the Court to

dismiss on three grounds: (1) Plaintiffs' claims against *Bivens* Defendants are time barred by a two-year statute of limitations; (2) Plaintiffs' claims present new *Bivens* contexts and special factors counsel hesitation in extending a remedy to these contexts; and (3) *Bivens* Defendants are entitled to qualified immunity. Each argument will be assessed in turn.

**b.   Standard of Review**

The present motion to dismiss is brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court reviews such motions accepting as true all well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The litigation may go forward if the factual allegations in the complaint establish a plausible claim for relief. *Id.*

In the alternative, Defendants ask this Court to grant summary judgment on the grounds that Plaintiffs' claims are untimely. However, the Court finds that a separate summary judgment analysis regarding the statute of limitations in unnecessary given that Defendants' motion does not clearly set out distinct arguments for this standard and, even assessing *Bivens* Defendants' declarations provided beyond the pleadings for the purpose of summary judgment, the Court's findings are the same. As fully explained below, the Court will dismiss the claims against six of the ten *Bivens* Defendants because the addition of their names is an impermissible amendment outside of the statute of limitations period.

**c.   Statute of Limitations**

*i.   Parties' Arguments*

Defendants argue that the *Bivens* claims in the fourth amended complaint are time barred because the statute of limitations ran on July 5, 2018 and Plaintiffs did not name *Bivens* Defendants until Plaintiffs filed their third amended complaint on December 5, 2019. (Doc. 109 at 15.) Defendants further argue that Plaintiffs cannot circumvent the statute of limitations by relating the amendment back to the original complaint under Federal Rule of Civil Procedure 15(c)(1)(C). (*Id.* at 16–17.) Specifically, they assert that there was no notice or mistake as required to make such an amendment under Rule 15. (*Id.*) First, *Bivens* Defendants did not receive notice within the 90-day period required by

Federal Rule of Civil Procedure 4(m), thereby prejudicing their ability to defend against the claims. (*Id.* at 16.) Additionally, the use of John Doe defendants is not a "mistake concerning the proper party's identity" as contemplated by Rule 15(c)(1)(C)(ii). (*Id.* at 17.)

In response, Plaintiffs stress the difficulty they experienced obtaining the necessary information from the Bureau of Prisons ("BOP") in order to properly identify the officials responsible for the actions described in the original complaint. (Doc. 128 at 2, 24.) Therefore, Plaintiffs argue that Arizona Rule of Civil Procedure 10(d), which allows the use of fictitious party names, permits the replacement of John Does with *Bivens* Defendants without implicating Rule 15. (*Id.* at 25.) Even if Rule 15 is applied, Plaintiffs contend that *Bivens* Defendants had constructive notice imputed through the BOP and United States Attorney's Office who share a "community of interest" with *Bivens* Defendants and were aware of the lawsuit within the notice period. (*Id.* at 29–30.) Moreover, Plaintiffs assert that the original complaint provided a clear indication to *Bivens* Defendants that they would be implicated in the litigation because it identified ten of the *Bivens* Defendants by name and explicitly described the roles and conduct targeted by the claim. (*Id.* at 25–27.)

Defendants challenge Plaintiffs' application of Arizona Rule 10(d) to save their claims. (Doc. 134 at 5.) They argue that, even if applicable, the rule only permits the use of fictitious names when the plaintiff does not know the true names, and Plaintiffs knew of ten of the *Bivens* Defendants at the time they filed the original complaint. (*Id.*) Finally, Defendants argue that any reliance on Arizona Rule 10(d) is undermined by the replacement of seven John Does with sixteen *Bivens* Defendants without explanation as to how they are equivalent. (*Id.* at 5–6.)

### ii.    Standard for Relation Back of Unnamed Defendants

In Arizona, the statute of limitations for a *Bivens* action is two years. A.R.S. § 12-542; *Van Strum v. Lawn*, 940 F.2d 406, 408–10 (9th Cir. 1991); *Ramage v. United States*, No. 14-2132-TUC-CKJ, 2014 WL 4702288, at *6 (D. Ariz. Sept. 22, 2014). Nonetheless, Federal Rule of Civil Procedure 15(c) permits the relation back of amendments to the original complaint even after the time for new actions has expired. Fed. R. Civ. P. 15(c).

Rule 15(c) is "liberally applied." *Warden v. Walkup*, No. CV-13-00283-TUC-DCB (BPV), 2018 WL 3084728, at *2 (D. Ariz. June 22, 2018) (citing *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2004)). The Court has the discretion to determine whether an amendment relates back under Rule 15(c). *Id.* (citing *Louisiana-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434–35 (9th Cir. 1993)). Moreover, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Walkup*, 2018 WL 3084728, at *2. The purpose is "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *ASARCO, LLC*, 765 F.3d at 1005 (citation omitted); *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010) (Rule 15 reflects a preference "for resolving disputes on their merits").

Under Rule 15(c)(1), an amendment relates back to the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Thus, there are three primary requirements for relation back under Rule 15(c)(1)(C): (1) the proposed amendment must arise out of the same conduct or transaction described in the original pleading; (2) the prospective defendant must receive notice within 90 days of the original complaint so as not to be prejudiced in defending against the claim; and (3) the need to change the party or the naming of the party must result from a "mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(B)–(C); Fed. R. Civ. P. 4(m).

The notice requirement may be satisfied by either actual or constructive notice when the circumstances indicate the prospective defendant had reason to expect the litigation was aimed at him. *See Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001); *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986); *Tomlin v. Gafvert*, CV 13-1980-PHX-SMM (ESW), 2015 WL 4639242, at *5 (D. Ariz. Aug. 4, 2015). Moreover, notice may be imputed to a defendant who shares a "community of interest" with an already-named defendant. *Singletary*, 266 F.3d at 195–99; *Tomlin*, 2015 WL 4639242, at *5 (citing *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1503 (9th Cir. 1994)). If the parties' business operations or other activities are so closely related that the commencement of an action against one provides notice to the other, they are thought to share a community of interest. *Singletary*, 266 F.3d at 197; *Schiavone*, 477 U.S. at 29. "The fundamental question is whether the defendant has been put on notice with regard to the claim against him raised by the amended pleading." *Warden v. Miranda et al.*, No. CV 14-02050-TUC-DCB, Doc. 62 at 8 (D. Ariz. June 28, 2016) (quoting *Rural Fire Protection Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966)).

Rule 15 also requires that the prospective defendant "knew or should have known that the action would have been brought against him, *but for a mistake concerning the proper party's identity*." Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis added); *see also Krupski*, 560 U.S. at 548 (placing the correct focus of the inquiry on the prospective defendant's knowledge and not on the plaintiff's knowledge). Nonetheless, the Ninth Circuit has determined that simply "[r]eplacing a 'John Doe' defendant with the actual name of a defendant is not a 'mistake' that allows relation back under Rule 15(c)(1)(C)." *Boss v. City of Mesa*, 7467 F. App'x 692, 694 (9th Cir. 2018) (citing *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1203–04 (9th Cir. 2014)).

### 1.   Arizona Rule of Civil Procedure 10(d)

Rule 15 instructs courts to consider state rules regarding the relation back of amendments "when that state's law provides the applicable statute of limitations and is more lenient." *Butler*, 766 F.3d at 1198–1201; *see also* Fed. R. Civ. P. 15(c)(1)(A). This

district has previously applied Arizona Rule of Civil Procedure 10(d) to the question presented in this case, finding that where Arizona Rule 10(d) resolves the issue, Rule 15 need not be implicated. *See Walkup*, No. CV-13-00283-TUC-DCB (BPV), 2018 WL 3084728, at *3; *Tomlin*, 2015 WL 4639242, at *4.

Arizona Rule of Civil Procedure 10(d) provides that a defendant may be referred to in the pleadings by a fictitious name when the name of the defendant is unknown to the plaintiff. Ariz. R. Civ. P. 10(d). "If the defendant's true name is discovered, the pleading or proceeding should be amended accordingly." *Id.* "[T]he lack of knowledge of the true name of a defendant must be real not feigned, and must not be willful ignorance, or such as may be removed by some inquiry or resort to information that is easily accessible." *Gonzalez v. Tidelands Motor Hotel Co., Inc.*, 598 P.2d 1036, 1037 (Ariz. Ct. App. 1979). Arizona Rule 10(d) "implies that the plaintiff has at least some idea of the existence of a defendant, but is without knowledge of the *name*." *Lane v. Elco Indus., Inc.*, 656 P.2d 650, 655 (Ariz. Ct. App. 1982); *see also Miranda et al.*, No. CV 14-02050-TUC-DCB, Doc. 62 at 8. If the defendant has otherwise been clearly identified in the original complaint, there is no need to implicate Rule 15(c) because Arizona Rule 10(d) applies and resolves the issue. *See Lane*, 656 P.2d at 655; *Miranda et al.*, No. CV 14-02050-TUC-DCB, Doc. 62 at 12. In this situation, the "substitution of the correct name at a later date does not add a party to the case—it merely corrects the name of the defendant whom the plaintiff already has sued." *Tomlin*, 2015 WL 4639242, at *4 (citing *McGill v. Nat'l Specialty Ins. Co.*, CV12–1671–PHX–DGC, 2013 WL 331256, at *3 (D. Ariz. Jan. 29, 2013)).

However, if the plaintiff seeks to add a claim against a defendant that the plaintiff did not originally intend to sue, Rule 15(c), rather than Arizona Rule 10(d), is applicable. *Tomlin*, 2015 WL 4639242, at *4. Arizona Rule 10(d) does not resolve situations "*where* [the plaintiff] *has no idea that there are such parties against whom a claim might be asserted*." *Lane*, 656 P.2d at 655. In such circumstances, the plaintiff "is in actuality adding a party rather than merely inserting a name of a party already identified in the original complaint." *Id.* Arizona Rule 10(d) permits relation back after the statute of limitations has

1   expired if defendants had actual notice or should have known of the claim against them

2   within the time allowed for service. *See Hartford Ins. Grp. v. Beck*, 472 P.2d 955, 957

3   (Ariz. Ct. App. 1970).

4           *iii.    Arizona Rule 10(d) Analysis*

5           Here, it is clear to the Court that Plaintiffs intended to sue *Bivens* Defendants from

6   the time of the original complaint but simply did not have access to the information

7   necessary to properly and assuredly identify them. This lack of knowledge was far from a

8   demonstration of willful ignorance. On the contrary, Plaintiffs have outlined the steps they

9   undertook to correctly identify the prison officials involved in the incident prior to filing

10  the original complaint. (Doc. 103 at 9 n.1.) However, following unsuccessful attempts to

11  obtain this information through BOP and Freedom of Information Act requests, Plaintiffs

12  resorted to interviewing prisoners who were witnesses to the events surrounding Smith's

13  death. (*Id.*) According to Plaintiffs, these witnesses had difficulty recalling the names of

14  prison officials. (*Id.*) This is a reasonable assertion given the many conditions in prison that

15  would prevent prisoners from correctly recalling the names of specific correctional

16  officers. It is therefore understandable that Plaintiffs were hesitant to fully rely on the

17  names they received from these witnesses. Nonetheless, the original complaint

18  demonstrates Plaintiffs' intent to sue *Bivens* Defendants—as well as their knowledge that

19  these individuals existed—in that the body of the complaint identifies ten of the *Bivens*

20  Defendants' names as the suspected names of some of the officials involved. (Doc. 1 at 7–

21  8.) The original complaint also described the job titles of the target defendants and their

22  alleged conduct underlying the claim. (*Id.* at 32–34.) Specifically, Plaintiffs identified the

23  SHU Lieutenant ("John Doe 3"), SHU Manager ("John Doe 4"), and SHU Correctional

24  Officers ("John Does 5–7")—individuals who Plaintiffs allege were responsible for placing

25  and keeping Smith and Giovanni together despite knowledge that Giovanni posed an

26  ongoing threat to Smith. (*Id.* at 6–7, 32–34.)

27          The Court finds that Arizona Rule 10(d) plainly permits the correction of the

28  fictitious names used for the ten *Bivens* Defendants whose names were listed in the original

- 8 -

complaint as the likely identities of intended defendants. These include *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano, Franco, Beans, Dunham, and Domitrovich. By listing the names, Plaintiffs provided a clear indication that these ten individuals were the targets of the litigation. Therefore, substituting their later-verified names merely corrects the names of defendants that Plaintiffs had already intended to sue. Moreover, the alleged conduct and job titles identified in the original complaint align with these ten individuals. Specifically, *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano, Franco, Beans, and Dunham correlate to the SHU Correctional Officer title of John Does 5 through 7, and *Bivens* Defendant Domitrovich correlates to the supervisory role outlined in the description of John Does 1 through 3. The Court does not find that there must be precise numerical correlation between the number of John Does and *Bivens* Defendants, especially given that these ten were identified by name in the body of the complaint.

Finally, *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano, Franco, Beans, Dunham, and Domitrovich were on notice that they were the intended targets of the litigation at the time of the original complaint despite the use of fictitious party names. As previously emphasized, their correct names were identified in the filing as the likely, but unverified, names of the prison officials Plaintiffs intended to sue. Moreover, as BOP employees at USP Tucson, these *Bivens* Defendants operated in the same community of shared interest as parties who were also notified about the pending litigation. The BOP was aware that Plaintiffs were seeking information regarding Smith's death for purposes of preparing this litigation and the two originally-named warden defendants were also BOP employees at USP Tucson. This connection as well as the fact that their names appeared in the complaint leads the Court to conclude that, at the very least, *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano, Franco, Beans, Dunham, and Domitrovich should have known that they were the prospective defendants whose identities Plaintiffs were seeking to confirm. Therefore, the Court agrees that Arizona Rule 10(d) resolves the statute of limitations issue without implicating Rule 15(c) as to ten of

the *Bivens* Defendants. It does not, however, resolve the question of the remaining six *Bivens* Defendants who were only identified by job description or alleged conduct. The Court must analyze these six *Bivens* Defendants under Rule 15(c) to determine whether the substitution of their names can relate back to the original filing.

        *iv.*    *Rule 15(c) Analysis*

The Court concludes that Rule 15(c) does not permit the relation back of an amendment replacing John Does with these six remaining *Bivens* Defendants Schied, Tinnerello, Inclan, Merrell, Nazarovich, and Davis. Although the Court believes that *Bivens* Defendants had constructive notice of the claim against them, the use of John Doe names is simply not a mistake for purposes of relation back under Rule 15(c)(1)(C)(ii).

The proposed amendment, replacing John Does with *Bivens* Defendants, arises out of the same conduct, transaction, or occurrence set out in the original complaint—the events surrounding Smith's death while he was housed with Giovanni. Although the 90-day notice period expired on October 1, 2018, *Bivens* Defendants received constructive notice at the time the original complaint was filed. As discussed above, Plaintiffs extensively outlined the specific titles and alleged conduct of the individuals targeted by the original complaint, giving *Bivens* Defendants Schied, Tinnerello, Inclan, Merrell, Nazarovich, and Davis reason to expect the litigation was aimed at them. These six *Bivens* Defendants would have also had constructive notice imputed to them because they share a community of interest with a named defendant, specifically the wardens named as defendants in the original complaint. Finally, the Court does not see that the ability of these six *Bivens* Defendants to defend against the claim would be prejudiced because they should have known who the intended targets of this litigation were from the start given their familiarity with the events that occurred at USP Tucson.

Nevertheless, Defendants persuasively cite the Ninth Circuit's opinion in *Boss v. City of Mesa* for the proposition that the use of John Doe defendants is simply not a mistake permitted by Rule 15(c). *Boss*, 746 F. App'x at 695 ("Replacing a 'John Doe' defendant with the actual name of a defendant is not a 'mistake' that allows relation back under Rule

15(c)(1)(C).”). Therefore, the Court finds that Rule 15(c) does not allow relation back of the amendment replacing John Does with *Bivens* Defendants Schied, Tinnerello, Inclan, Merrell, Nazarovich, and Davis. The statute of limitations expired before these six individuals were named in this litigation and, thus, the claims against them cannot proceed.

### d. **New *Bivens* Contexts**

Next, Defendants argue that Plaintiffs' claims against *Bivens* Defendants seek to expand the *Bivens* implied remedy to two new contexts and several special factors counsel this Court to hesitate to do so. (Doc. 109 at 19.) Therefore, Defendants urge the Court to decline to imply a *Bivens* remedy.

According to Defendants, the relevant cases in which the Supreme Court recognized a *Bivens* remedy—*Carlson v. Green*, 446 U.S. 14 (1980) and *Davis v. Passman*, 442 U.S. 228 (1979)—involve contexts that are different in a meaningful way from the present case. (Doc. 109 at 21.) Defendants further argue that four special factors counsel hesitation precluding the Court from extending a *Bivens* remedy: (1) Mr. Smith could have used the Administrative Remedy Program to appeal his cell assignment and Plaintiffs are currently pursuing the alternative remedy provided by the FTCA; (2) Congress has not provided a cause of action against individual correctional officers despite extensive legislation regarding prisoner litigation; (3) *Bivens* actions are not an appropriate method for litigating government policies or procedures; and (4) Plaintiffs' claims would hurt the government's ability to recruit and retain correctional officers, impose substantial costs on the government, and improperly interfere with prison operation. (*Id.* at 23–32.)

Plaintiffs assert that neither the Eighth Amendment nor the Fifth Amendment claim presents a new *Bivens* context. (Doc. 128 at 3.) They argue that the Eighth Amendment claim put forth in this case corresponds to the failure-to-protect *Bivens* claim recognized in *Farmer v. Brennan*, 511 U.S. 825 (1994). (Doc. 128 at 5.) Plaintiffs reject the argument that *Farmer* is not an appropriate *Bivens* context although the Supreme Court did not include *Farmer* in the list of permissible *Bivens* claims outlined in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). (Doc. 128 at 6.) Additionally, Plaintiffs argue that the Fifth Amendment

due process claim against *Bivens* Defendants is not a new context because it arises out of the same underlying conduct as the Eighth Amendment claim, specifically the failure to protect Smith. (*Id.* at 6.)

Furthermore, Plaintiffs argue that even if the Court were to consider special factors, none counsel hesitation. (*Id.* at 7.) First, the Administrative Remedy Program is not a remedy available to Plaintiffs and is irrelevant because it does not address the harm that this action seeks to remedy: Smith's death. (*Id.* at 8.) Plaintiffs also disagree that the FTCA is an adequate alternative remedy that precludes them from also pursuing a *Bivens* action because (1) the FTCA and *Bivens* are complementary sources of liability and (2) *Bivens* deters the conduct of individual officials, rather than simply the government as a whole, and imposes punitive damages in way that the FTCA does not. (*Id.* at 10–11.) Similarly, Plaintiffs contend that the Prison Litigation Reform Act ("PLRA") and other congressional legislation do not affect the Plaintiffs' ability to bring the present claim. (*Id.* at 11.) Specifically, Plaintiffs highlight that they are not prisoners, thus the PLRA's intent to deter "prisoner litigation" is not applicable. (*Id.*) They also emphasize that the PLRA does not provide any remedy itself but rather restricts the claims that can be brought by prisoners. (*Id.* at 11–12.) Plaintiffs argue that Congress had the opportunity to preclude the recovery of damages from federal officials in all instances and has not done so, indicating that Congress has accepted *Bivens* actions. (*Id.* at 12.) Finally, Plaintiffs rebuff the argument that the present action is an inappropriate intrusion into government policy in the way that *Abbasi* contemplated or that the costs to the government are sufficient reason to preclude the claims. (*Id.* at 13.)

i.    *Two-Step Inquiry Under* Bivens

A court that is asked to extend a *Bivens* remedy must engage in a two-step inquiry to determine whether an implied right of action for damages against a federal official may proceed. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *Abbasi*, 137 S. Ct. at 1857. The Supreme Court has emphasized that "separation-of-powers principles" are central to

this inquiry. *Abbasi*, 137 S. Ct. at 1857. A court must therefore ask whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy" and "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. Nonetheless, while implying a remedy under *Bivens* is disfavored, it may "still be available in a case against an individual federal officer who violates a person's constitutional rights while acting in his official capacity" as long as courts proceed with appropriate caution. *See Lanuza v. Love*, 899 F.3d 1019, 1028 (2018) (citing *Abbasi*, 137 S. Ct. at 1857).

### 1.  New Context

The first step in the *Bivens* inquiry is to decide whether the claim presents a "new context." *Malesko*, 534 U.S. at 68. The determination of what constitutes a new context is relatively broad, but the central question is whether the asserted context is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S. Ct. at 1859. While the Supreme Court has not provided an exhaustive list defining meaningful differences, it has offered the following insight:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. It is not sufficient that the asserted claim arises under the same broad constitutional provision where the context is otherwise meaningfully different. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).

In *Abbasi*, the Supreme Court listed the three seminal contexts in which it has extended a *Bivens* remedy: *Bivens* (search in violation of the Fourth Amendment), *Davis*

(sex discrimination in violation of the Fifth Amendment Equal Protection Clause), and *Carlson* (failure to provide medical care to a prisoner in violation of the Eighth Amendment). *Abbasi*, 137 S. Ct. at 1855. The Supreme Court did not explicitly identify an implied damages remedy for Eighth Amendment failure-to-protect claims in *Abbasi*. However, in deciding *Carlson*, and underscoring the significance of this decision in *Abbasi*, the Supreme Court made clear that a *Bivens* claim exists for "failure to provide adequate medical treatment" under the Eighth Amendment. *Id.* at 1855; *Carlson*, 446 U.S. at 19.

Moreover, the Supreme Court has not directly rejected its decision in *Farmer*, perhaps the most relevant case addressing Eighth Amendment failure-to-protect claims in the context of a *Bivens* action. *Farmer*, 511 U.S. at 831. "The Supreme Court has discouraged lower courts from renouncing its precedent on the belief that such cases were overruled by implication, instead directing the lower courts to 'follow the case which directly controls,' even if that precedent 'appears to rest on reasons rejected in some other line of decisions.'" *Garraway v. Ciufo*, No. 1:17–cv–00533–DAD–GSA–PC, 2018 WL 1710032, at *2 (E.D. Cal. Apr. 9, 2018) (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)); *see also Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."). *Farmer* involved a *Bivens* claim against a prison official and found that the defendant could "be held liable under the Eighth Amendment for denying humane conditions of confinement." *Farmer*, 511 U.S. at 847. The *Farmer* Court specifically emphasized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation omitted).

After *Abbasi*, the Ninth Circuit has recognized a *Bivens* claim under the Eighth Amendment when a prison official demonstrates deliberate indifference to prisoner safety. *Doreh v. Rodriguez*, 723 F. App'x 530, 530 (9th Cir. 2018). A number of district courts within the Ninth Circuit have also understood an Eighth Amendment failure-to-protect claim to exist post-*Abbasi*. *See, e.g.*, *McDaniels v. United States*, No. 14-02594-VBF-JDE,

2018 WL 7501292, at *5 (C.D. Cal. Dec. 28, 2018);  *Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at *7 (E.D. Cal. Oct. 26, 2018); *Marquez v. United States*, No. 3:18-cv-0434-CAB-NLS, 2018 WL 1942418, at *4 (S.D. Cal. Apr. 25, 2018); *Garraway*, 2018 WL 1710032, at *2–3. Additionally, the Third and Fourth Circuits have both concluded that *Bivens* claims arising in equivalent contexts to *Farmer* do not present new contexts. *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018) ("[A]n inmate's claim that prison officials violated his Fifth Amendment rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context . . . . [T]he Supreme Court ratified that kind of claim . . . in *Farmer*."); *Atkinson v. Holder*, 925 F.3d 606, 621 n.6 (4th Cir. 2019) ("The Supreme Court may have recognized a fourth *Bivens* context in *Farmer*."); *Doty v. Hollingsworth*, Civ. No. 15-3016, 2018 WL 1509082, at *3 (D.N.J. Mar. 27, 2018) (holding that an Eighth Amendment failure-to-protect claim premised on inmate-on-inmate violence is not a new context given sufficient similarity to both *Carlson* and *Farmer*).

a.  Analysis of Eighth Amendment Claim

This Court finds that Plaintiffs' Eighth Amendment claim based on a failure to protect Smith does not present a new *Bivens* context. Both *Carlson* and *Farmer* involved direct Eighth Amendment allegations against individual prison officials for their specific actions failing to protect an inmate from an ongoing safety threat. In *Farmer*, that threat specifically came from fellow inmates. The Court believes Plaintiffs' allegations in this case are equivalent. Therefore, there is no need to analyze the second prong of the *Bivens* new context inquiry with regard to Plaintiffs' Eighth Amendment claim.

Defendants call attention to the fact that this Court previously declined to recognize an implied remedy when Plaintiffs originally brought their *Bivens* claims against two wardens. (Doc. 109 at 12; Doc 44 at 4–5.) The facts underlying the claims *against the wardens* meaningfully differed from the contexts in which the Supreme Court has recognized a *Bivens* remedy. This Court was concerned that, in their original complaint, Plaintiffs had not offered any indication that the wardens were personally aware of the

threat to Smith or personally involved in the events leading up to Smith's death. The same concerns do not exist for the allegations against individual *Bivens* Defendants.

b.  Analysis of Fifth Amendment Claim

As this Court has previously stated, Plaintiffs' claim based on a Fifth Amendment due process violation presents a new context. (Doc. 44 at 4.) The most closely related case in which the Supreme Court has implied a *Bivens* remedy is *Davis*. In *Davis*, the plaintiff asserted a Fifth Amendment claim arising out of alleged sex discrimination in the workplace in violation of equal protection. Although Plaintiffs' second claim similarly asserts a Fifth Amendment violation, the specific constitutional right at issue is meaningfully different from that contemplated in *Davis*. The alleged violation of a due process right to familial association under the Fifth Amendment involves a distinct context from that of the Fifth Amendment right to equal protection.

Finally, although the underlying conduct is the same for the Eighth Amendment claim as for the Fifth Amendment claim, the constitutional rights asserted and the analyses required are dissimilar. This Court is not persuaded by Plaintiffs' reading of *Abbasi* that "what is significant in the new-context analysis is not the right at issue but the underlying conduct." (Doc. 128 at 6.) Because Plaintiffs' Fifth Amendment claim presents a new context, the Court is required to engage in the second step of the *Bivens* analysis to determine whether special factors counsel hesitation.

2.  Special Factors Counseling Hesitation as to Fifth Amendment Claim

If a court finds that a new context exists, it must assess whether special factors counsel the court to hesitate to extend an implied *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1857. The Supreme Court has not exhaustively defined what special factors are, but it has offered some examples. These include the potential cost to the government posed by allowing a private cause of action against government officials; whether Congress has passed legislation in the area that indicates it does not want courts to interfere; whether national security is at stake; whether an alternative remedial structure exists; and whether

the claim addresses individual conduct or a broad policy. *Id.* at 1856–63.

Nonetheless, the central focus remains the separation of powers. *Id.* at 1857–58. Therefore, a court must ask "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* A special factor is one that "cause[s] a court to hesitate before answering that question in the affirmative." *Id.* A court is required to exercise caution when deciding this question. *Hernandez*, 140 S. Ct. 735, 742 (2020) ("In both statutory and constitutional cases, our watchword is caution."). If such hesitation exists, a court must refrain from extending a *Bivens* remedy to the new context. *Abbasi*, 137 S. Ct. at 1858.

a.  Special Factors Analysis

Here, the Court finds that special factors counsel hesitation and, therefore, the Court cannot extend a *Bivens* remedy to the new context presented by Plaintiff's Fifth Amendment claim. This Court previously quoted language from *Abbasi* discussing Congress's action post-*Carlson* in passing the PLRA. (Doc. 44 at 5.) In *Abbasi*, the Supreme Court noted:

> [I]t seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs . . . . [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Abbasi*, 137 S. Ct. at 1865. Thus, although the PLRA does not provide a standalone remedy for prisoners to redress complaints against prison officials, it does cause this Court to hesitate to say that the judiciary is best suited to weigh the costs and benefits of allowing a damages action in this context. This is consistent with this Court's previous determination that concluding whether prisoners can pursue damages involves "'a host of considerations that must be weighed and appraised,' and, as such, Congress is in a better position than the Court to determine the parameters of such a damages claim." (Doc. 44 at 6 (quoting

*Portway v. Bracamontes*, No. CV-15-00415-RCC, Doc. 92 at 5 (D. Ariz. Sept. 7, 2018).)

In sum, the Court finds that, while Plaintiffs' Eighth Amendment claim does not present a new context, Plaintiffs' Fifth Amendment claim does in fact present a context that is meaningfully different from those previously recognized by the Supreme Court. Furthermore, special factors counsel this Court to hesitate to extend a *Bivens* remedy to the new Fifth Amendment context. The greatest consideration here is the separation of powers and the determination that Congress is best suited to consider the necessary costs and benefits of permitting damages actions in this context. Therefore, the Court finds that Plaintiffs' Eighth Amendment claim may proceed, but Defendants' motion to dismiss is granted as to Plaintiffs' Fifth Amendment claim.

### e. <u>Qualified Immunity</u>

Lastly, Defendants argue that *Bivens* Defendants are entitled to qualified immunity because Plaintiffs have not sufficiently alleged that *Bivens* Defendants personally participated in the violation of a clearly established constitutional right. (Doc. 109 at 33–34.) Defendants contend that (1) Plaintiffs improperly group *Bivens* Defendants' alleged conduct together without distinguishing the specific actions of each individual official and (2) Plaintiffs' allegations go beyond the discrete incident of Smith's death to reach broad policy concerns that cannot be addressed by a *Bivens* action. (*Id.* at 35–37.)

In response, Plaintiffs assert that they provided detailed allegations against each *Bivens* Defendant. (Doc. 128 at 15.) Further, relying primarily on *Farmer*, Plaintiffs argue that each individual *Bivens* Defendant disregarded an obvious risk of harm by either placing Smith and Giovanni together or failing to separate them, thereby violating a clearly established right to protection from other prisoners under the Eighth Amendment. (*Id.* at 15–23.)

As previously outlined, Plaintiffs' Fifth Amendment claim will not proceed as it presents a new context to which this Court hesitates to extend a *Bivens* remedy. Furthermore, the claims against *Bivens* Defendants Schied, Tinnerello, Inclan, Merrell, Nazarovich, and Davis will not move forward because the replacement of John Doe

Defendants with their names is an impermissible amendment. Thus, the Court will only assess whether *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano, Franco, Beans, Dunham, and Domitrovich are entitled to qualified immunity insulating them from Plaintiffs' Eighth Amendment claim.

      *i.   Qualified Immunity Standard*

A court asked to determine whether officials are entitled to qualified immunity must answer two questions: "(1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (citing *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). A clearly established right is one where "every reasonable official would have understood that what he was doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks omitted). Moreover, the clearly established right must be specific to the facts of the instant case not a generalized injury. *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

A plaintiff also must allege that each defendant *personally participated* in the violation of this clearly established constitutional right. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Abbasi*, 137 S. Ct. at 1860 ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."). Furthermore, "it must be noted that a *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860 (quoting *Malesko*, 534 U.S. at 74). The function of a *Bivens* action is to deter individual conduct. *Id.*

An inmate's right to protection from fellow inmates who have expressed an intent to harm them is a clearly established constitutional right. *See Farmer*, 511 U.S. at 833; *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) ("[I]f any of the officers knew that [the inmate aggressor] was acting out dangerously with cellmates or that

he was a threat to Ford but housed Ford with him anyway, this would violate the Eighth Amendment . . . . [T]here is no question that this conduct would touch all the bases established in *Farmer*."); *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067 (9th Cir. 2016) (holding correctional officers were not entitled to qualified immunity when they housed plaintiff "in a cell with a combative inmate, when the cell had no audio or video surveillance and only occasional monitoring" because the law was clearly established this was a constitutional violation). The *Farmer* Court recognized that "prison officials have a duty [under the Eighth Amendment] . . . to protect prisoners from violence at the hands of other prisoners" especially because prison officials have "stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid . . . ." *Farmer*, 511 U.S. at 833. A plaintiff asserting that an individual officer violated this right must allege that the deprivation was "objectively, 'sufficiently serious'" and that the officer acted with "deliberate indifference." *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The requisite deliberate indifference exists when an "official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.*

    *ii.   Qualified Immunity Analysis*

    The Court finds that *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano, Franco, Beans, Dunham, and Domitrovich are not entitled to qualified immunity. The facts alleged, taken in the light most favorable to Plaintiffs, show that *Bivens* Defendants' individual conduct violated a clearly established constitutional right, namely the Eighth Amendment right to protection from violence by other inmates. The Court does not agree that Plaintiffs have improperly grouped *Bivens* Defendants' actions. Rather, the Court finds that Plaintiffs have made allegations as to the conduct of each individual *Bivens* Defendant.

    Specifically, Plaintiffs allege that *Bivens* Defendant Domitrovich, as Operations Lieutenant, was aware that Smith was a sex offender and that Giovanni posed a threat to

Smith's safety. (Doc. 103 at 4, 40, 45.) He reviewed the two prisoners' paperwork and approved their placement together on June 28, 2016. (*Id.* at 45.) According to the allegations, *Bivens* Defendant Domitrovich continued to approve the placement over the course of the week that followed despite hearing loud and frequent arguments between the two men and despite being made aware of Giovanni's ongoing threat to harm Smith. (*Id.* at 55–56.)

Plaintiffs also allege that *Bivens* Defendants Kurtz, Yanez, and Franco were on duty as SHU Correctional Officers on June 28, 2016, the day that Smith and Giovanni were placed together, and heard Giovanni threaten to hurt any sex offender he was housed with. (*Id.* at 11–13; 43; 60–61.) Earlier that day, *Bivens* Defendants Kurtz, Yanez, and Franco reportedly tried to house Giovanni with a different sex offender but moved Giovanni to another cell shortly after he threatened his cellmate. (*Id.* at 43.) Plaintiffs also allege that *Bivens* Defendants Kurtz, Yanez, and Franco brought Smith into the SHU revealing his status as a sex offender saying, "We've got a 'cho mo' coming in." (*Id.* at 45.) *Bivens* Defendant Kurtz then allegedly told Giovanni that they were going to house him with Smith and said something to effect of "do what you gotta do." (*Id.* at 46.) *Bivens* Defendants Kurtz, Yanez, and Franco later brought Smith to Giovanni's cell despite hearing Giovanni's continued threats to hurt sex offenders. (*Id.*)

Furthermore, Plaintiffs allege that *Bivens* Defendants Kurtz, Yanez, Franco, Islas, Ceniceros, Goodman, Montano, Beans, and Dunham, all SHU Correctional Officers, failed to separate Smith and Giovanni over the course of the week despite the ongoing safety risk. (*Id.* at 47.) They allegedly heard Smith and Giovanni get into several loud arguments and observed threatening messages that Giovanni wrote on the wall of their shared cell. (*Id.* at 47–52.) Plaintiffs also allege that *Bivens* Defendants Kurtz, Yanez, Franco, Islas, Ceniceros, Goodman, Montano, Beans, and Dunham failed to remove a prohibited clothesline from the shared cell, the clothesline that Giovanni ultimately used to kill Smith. (*Id.* at 5–6.) These facts, taken as alleged, demonstrate that *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano, Franco, Beans, Dunham, and Domitrovich

personally participated in the constitutional violation.

This Court previously found that Plaintiffs' *Bivens* claims against two wardens impermissibly sought to challenge prison policy because Plaintiffs failed to allege that either warden was personally involved in the constitutional violation or knew about Giovanni's threats towards Smith. (Doc. 44 at 7.) In the absence of personal knowledge or involvement in the events, the wardens "would have had to initiate policy changes related to sex offenders and gang drop-outs" to remedy the unconstitutional action alleged. (*Id.*) Accordingly, the Court held that no clearly established constitutional right required prison officials to implement such broad policy changes. This ruling did not hold, however, that individual prison officials are entitled to qualified immunity where, as here, there are specific allegations made as to their personal involvement in the events.

Therefore, because Plaintiffs have put forth specific allegations that *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano, Franco, Beans, Dunham, and Domitrovich personally participated in the violation of a clearly established constitutional right, the Court finds that they are not entitled to qualified immunity insulating them from Plaintiffs' Eighth Amendment claim.

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1) Defendants' Motion to Dismiss All Claims in Plaintiffs' Fourth Amended Complaint, or, In the Alternative, Summary Judgment on Statute of Limitations Grounds is GRANTED IN PART and DENIED IN PART. (Doc. 109.)

2) The motion is **GRANTED** dismissing all claims against *Bivens* Defendants Schied, Tinnerello, Inclan, Merrell, Nazarovich, and Davis.

3) The motion is **DENIED** as to all Eighth Amendment claims against *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano, Franco, Beans, Dunham, and Domitrovich.

4) The motion is **GRANTED** dismissing Fifth Amendment claims against

1    *Bivens* Defendants Islas, Ceniceros, Goodman, Yanez, Kurtz, Montano,

2    Franco, Beans, Dunham, and Domitrovich.

3    Dated this 3rd day of March, 2021.

_____

Honorable Raner C. Collins
Senior United States District Judge